**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lavinia Aircraft Leasing, LLC; Thomas McDermott,<br><br>    Plaintiffs,<br><br>v.<br><br>Piper Aircraft Inc. et al.,<br><br>    Defendants. | No. CV-16-02849-PHX-DGC<br><br>**ORDER** |

Plaintiffs Lavinia Aircraft Leasing, LLC ("Lavinia") and Thomas McDermott ("McDermott") have sued Defendant Pratt & Whitney Canada Corp. ("PWC") and others for the failure of a PWC engine in a Piper Meridian aircraft. PWC filed a motion to dismiss Plaintiffs' claims for lack of personal jurisdiction (Doc. 21), and the motion was fully briefed (Docs. 28, 30). After finding that Plaintiffs had failed to establish personal jurisdiction over PWC, the Court elected to delay issuing a final decision and instead allowed Plaintiffs to conduct jurisdictional discovery. Doc. 35. The time period for jurisdictional discovery has closed, and supplemental briefing is complete. Docs. 41, 42. Oral argument will not aid in the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998). PWC's motion to dismiss will be granted.

**I. Background.**

  **A. Case History.**

Plaintiff Thomas McDermott is an Arizona resident and the sole member of Lavinia. Doc. 28-1, ¶ 2. He and Lavinia own a 2001 Piper Meridian aircraft and allege

that the aircraft's engine exploded on July 7, 2014. *Id.*, ¶¶ 7, 9, 12. Defendant PWC is a foreign corporation with its principal place of business in Quebec, Canada. Doc. 1-1, ¶ 10.

PWC designs, manufactures, distributes, and markets aircraft engines, including the engine installed in Plaintiffs' plane. *Id.*, ¶ 13. On November 7, 2013, Plaintiff McDermott purchased a used 2001 Piper Meridian aircraft from Cutter Southwest Aviation Aircraft Sales, LLC ("Cutter"). *Id.*, ¶ 7. On July 7, 2014, McDermott was preparing to take off from a Colorado airport when the engine exploded. *Id.*, ¶¶ 7, 9, 12. After the engine failure, McDermott purchased a PWC replacement engine through PWC employees in Arizona. *Id.*, ¶ 22, 23, 25.

On July 6, 2016, Plaintiffs filed suit asserting theories of strict product liability, negligence, and breach of warranties. Doc. 1-1. On August 25, 2016, the action was removed to this Court based on diversity of citizenship. Doc. 1.

**B.  Additional Discovery.**

In its December 20, 2016 order, at Plaintiffs' request, the Court agreed that "Plaintiffs may engage in jurisdictional discovery between [December 20, 2016] and February 3, 2017." Doc. 35 at 7. The Court further ordered that "Plaintiffs shall file a supplemental memorandum . . . setting forth the additional evidence that supports specific personal jurisdiction, on or before February 8, 2017." *Id.* On February 9, 2017, Plaintiffs filed their supplemental memorandum. Doc. 41.

Plaintiffs submit no additional evidence obtained from jurisdictional discovery. *See id.* The docket shows that Plaintiffs took no discovery during the extended discovery period. Instead, Plaintiffs' supplemental brief alleges new facts in an attempt to establish specific personal jurisdiction over PWC. *Id.* at 3-4. PWC does not argue that the Court may not consider these new facts that were apparently available, but not raised, at the time of Plaintiffs' response brief. Doc. 42. Instead, PWC addresses Plaintiff's argument on the merits and contends that Plaintiffs still fail to establish specific jurisdiction over PWC in Arizona. *Id.* at 2-6.

## II. Legal Standard.

Plaintiffs bear the burden of proving that the Court may exercise specific jurisdiction over PWC. *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1154 (9th Cir. 2006). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1223 (9th Cir. 2011) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)). "The plaintiff cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true." *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004)).

## III. Analysis.

Arizona's long-arm statute, Ariz. R. Civ. P. 4.2(a), applies in this diversity action. *See Terracom v. Valley Nat'l Bank,* 49 F.3d 555, 559 (9th Cir. 1995). Rule 4.2(a) "provides for personal jurisdiction co-extensive with the limits of federal due process." *Doe v. Am. Nat'l Red Cross,* 112 F.3d 1048, 1050 (9th Cir. 1997) (citation omitted). A corporation "may be subject to personal jurisdiction only when its contacts with the forum state support either specific or general jurisdiction." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1068 (9th Cir. 2014) (citing *Int'l Shoe*, 326 U.S. 310).

Plaintiffs allege PWC is subject to specific jurisdiction. Doc. 28. A court may exercise specific jurisdiction over a foreign defendant if its contacts with the forum give rise to the cause of action. *Doe v. Unocal Corp.,* 248 F.3d 915, 923 (9th Cir. 2001). The Ninth Circuit employs a three-prong test to determine whether a party has sufficient minimum contacts for specific jurisdiction to exist:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of

jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzenegger,* 374 F.3d at 802. Plaintiffs have the burden of satisfying the first two elements. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011). If they do, Defendant must show that the exercise of jurisdiction would be unreasonable. *Id.*

### A. Purposeful Availment.

To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have engaged in some type of affirmative conduct that allows or promotes the transaction of business within the forum state. *Boschetto v. Hansing,* 539 F.3d 1011, 1016 (9th Cir. 2008). The defendant's conduct, not the plaintiff's, must create a substantial connection with the forum state. *Walden v. Fiore,* 134 S. Ct. 1115, 1121 (2014). The goal of focusing on a defendant's conduct is to prevent defendants from being "haled into court as the result of random, fortuitous, or attenuated contacts." *Gray & Co.*, 913 F.2d at 760 (citation omitted).

PWC has sufficient contacts with Arizona to meet the purposeful availment requirement. It is undisputed that PWC has sales employees in Arizona and directs Arizona residents to these representatives on the PWC webpage. Doc. 28-5 at 2-3. By taking these actions to facilitate sales in Arizona, PWC avails itself of the privilege of doing business here. The first prong of the specific jurisdiction test is satisfied.

### B. Arising Out Of.

Purposeful availment is not enough; the claims in this case must also arise out of PWC's contacts with Arizona. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000). As the parties agree, the Ninth Circuit uses a "but for" test – a claim arises out of a defendant's forum contacts if, "but for" the contacts, the cause of action would not have arisen. *Id.*; *Terracom*, 49 F.3d at 561.

In its prior order, the Court held that the "but for" requirement was not satisfied. Plaintiffs had not shown that their claim arose out of PWC's contacts with Arizona:

> The Court cannot hold that "but for" PWC's activities in Arizona, the suit would not have arisen. PWC has a network of contacts in Arizona, but Plaintiffs do not argue that they purchased the engine because of those contacts or that the engine malfunction arose from those contacts.
>
> PWC did not manufacture, distribute, or place the engine into Plaintiffs' plane in Arizona. Doc. 21-1, ¶¶ 7, 8, 9. PWC's website lists Arizona marketers and sellers, but Plaintiffs do not allege that they used this website or the website's recommended contacts to make the engine purchase. Plaintiffs did not buy the engine from a PWC salesperson or from a PWC sales facility. Rather, the engine came standard in the plane that Plaintiffs purchased from Cutter. [Plaintiffs allege that] PWC has service centers in Arizona, but Plaintiffs do not contend that McDermott's purchase of the plane was based on or impacted by the existence of those centers. Nor do Plaintiffs contend that the accident was due to any PWC engine repairs in Arizona.

Doc. 35 at 4-5.

Addressing this conclusion by the Court, Plaintiffs argue in their supplemental memorandum that they "would not have purchased the Aircraft and PWC's PT6 engine without PWC's marketing efforts in Arizona regarding the performance and reliability of the PT6 and more importantly the fact that PWC had authorized repair facilities in Arizona in the event there was a problem with the PWC PT6 engine." Doc. 41 at 4. Thus, Plaintiffs contend, their "claims rise directly from PWC's conduct toward Arizona." *Id.* A closer look at the evidence actually submitted by Plaintiffs, however, shows that they have not satisfied the "but for" causation requirement.

### 1. McDermott's Declarations.

The Court may consider affidavits and other materials when weighing a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), and, in the absence of an evidentiary hearing, the affidavits and other material must establish only a prima facie case of personal jurisdiction. The showing, however, must be based on admissible evidence. *Travelers Cas. & Sur. Co. of Am. v. Telstar Const. Co.*, 252 F. Supp. 2d 917, 922 (D. Ariz. 2003) ("It is equally as clear, however, that Plaintiff's affidavits and exhibits submitted in support of [personal jurisdiction] must comply with the Rules of Evidence."); *Fujitsu-ICL Sys. Inc. v. Efmark Serv. Co.*, No. 00-CV-0777-W-(LSP), 2000 WL 1409760, at *3 (S.D .Cal. June 29, 2000) ("a prima facie showing means that

plaintiff has produced admissible evidence, which, if believed, would be sufficient to establish the existence of personal jurisdiction"); *Hancock v. Hitt*, No. C-98-960-MMC-(ARB), 1998 WL 345392, at *2 (N.D. Cal. June 9, 1998) ("plaintiff must produce admissible evidence to support the court's exercise of personal jurisdiction"); *see also Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 506 (6th Cir. 2014) (improper to rely on hearsay statements or statements lacking personal knowledge in opposing motion to dismiss for lack of personal jurisdiction); *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1278 (11th Cir. 2009) (affirming district court's refusal to rely on inadmissable hearsay in affidavits attempting to show personal jurisdiction). "Prima facie" means "[s]ufficient to establish a fact or raise a presumption unless disproved or rebutted." Black's Law Dictionary at 1310 (9th ed.). And evidence will be sufficient to establish a fact, even if unrebutted, only if the evidence is admissible.

In support of their new argument, Plaintiffs submit a second declaration from Plaintiff Thomas McDermott. *See* Doc. 41 at 4-5; Doc. 41-1 at 1-3. McDermott states in the second declaration that, in 2013, he became interested in purchasing a Piper Aircraft with a PWC PT6A-42A turbo prop engine. Doc. 41-1, ¶ 3. McDermott asserts that Cutter Southwest Aviation Aircraft Sales is "an authorized Piper dealer and repair facility specializing in PWC engines," that "PWC has many authorized repair facilities located in Arizona and more specifically the Phoenix area," and that he "would not have purchased the Aircraft if PWC did not have authorized repair facilities in Arizona [to which] I could take the Aircraft." *Id.*, ¶¶ 4-5, 10. In other words, Plaintiffs assert that McDermott specifically relied on the presence of PWC authorized service centers in Arizona when he decided to buy the airplane. But Plaintiffs present no evidence, other than McDermott's assertions, that PWC has such centers in Arizona.

PWC argues that "Plaintiff McDermott's unsubstantiated assertions – of which he does not purport to have personal knowledge – are incompetent and cannot be relied upon to create contacts between [PWC] and the state of Arizona which do not exist." Doc. 42 at 4. The Court agrees. Rule 602 of the Federal Rules of Evidence states that "[a]

witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of that matter." Fed. R. Evid. § 602. It is significant that while McDermott obviously has personal knowledge of why he purchased the Aircraft, he provides no basis for any personal knowledge of whether PWC has authorized service centers in Arizona. Plaintiffs make no attempt to show that McDermott has such knowledge. Plaintiffs could have conducted discovery concerning PWC service centers in Arizona during the jurisdictional discovery period allowed by the Court, they did not.

Plaintiffs' memorandum does assert that "Plaintiffs researched these issues" (Doc. 41 at 2), but this statement is not contained in McDermott's declaration. The declaration says nothing about researching PWC service centers. *See* Doc. 41-1. Plaintiffs' memorandum also asserts that McDermott "wanted a PWC PT6 engine due to PWC's advertising efforts in Arizona regarding the reliability of the PT6A" (Doc. 41 at 2), but McDermott's declaration says nothing about advertising efforts in Arizona. Doc. 41-1. He says that he was interested in purchasing the PWC engine "because of the PWC advertising regarding its performance" (Doc. 41-1, ¶ 7), but the declaration does not say that such advertising occurred in or was directed to Arizona. *See* Doc. 41-1.

Thus, the only new evidence submitted by Plaintiffs that would support a conclusion that the claims in this case arose out of PWC's contacts with Arizona are McDermott's unsupported assertions that PWC has authorized service centers in Arizona.[1] In addition to the fact that those assertions would not be admissible under Rule 602, PWC submits evidence that Cutter Aviation – the only facility Plaintiffs identify – is not an authorized PWC facility. PWC submits a list of all PWC factory-authorized facilities as posted on its website, showing no such facilities in Arizona. Doc. 30 at 18-

---

[1] The declaration states (again, without support) that PWC ships parts into Arizona, and McDermott asserted in his earlier declaration that he took various steps to acquire a new PWC engine after the accident, but nothing in the declaration connects the shipment of parts to his decision to buy the engine, and events occurring after the accident cannot provide a basis for personal jurisdiction over Plaintiffs' claims arising out of the accident.

26 (showing authorized facilities in California, Vermont, West Virginia, Kansas, and Georgia, but none in Arizona). PWC also submits a declaration from Cutter Aviation Vice President and Chief Financial Officer, Steven Prieser. Doc. 42-1. Prieser avers that "Cutter Aviation is not a Pratt & Whitney Canada factory-authorized service repair center for Pratt & Whitney Canada engines," and that "Cutter Aviation does not have any contractual relationship with Pratt & Whitney Canada to provide service or repairs to its engines." Doc. 42-1 at 2.

In short, Plaintiffs have submitted no competent evidence that PWC has authorized service centers in Arizona – the fact they claim to have relied upon in purchasing the engine. Even if McDermott genuinely believed that PWC had such service facilities in this State, his belief cannot establish specific jurisdiction over PWC. The defendant's conduct, not the plaintiff's, must create a substantial connection with the forum state, out of which the claim arises. *Walden,* 134 S. Ct. at 1121. Plaintiffs also assert that McDermott relied on PWC advertising regarding performance of its engines, but they provide no evidence about the nature or content of such advertising, or where or when it was seen, and no evidence that the advertising was directed to Arizona.

**2. PWC's Arizona Contacts Do Not Give Rise to Plaintiffs' Claims.**

Plaintiffs provide no additional evidence to support their argument that was not considered in the Courts' first order. After the opportunity for jurisdictional discovery, it remains undisputed that PWC did not design, manufacture, sell, or distribute the subject engine in Arizona. Nor do Plaintiffs assert that PWC or a PWC authorized maintenance facility performed repairs or service on the subject PT6 engine at any time. Plaintiffs provide no competent evidence that PWC's contacts with Arizona gave rise to Plaintiffs' claims, which was the very purpose of allowing further discovery.

Based on the facts and evidence provided, the Court cannot conclude that "but for" PWC's activities in Arizona, Plaintiffs' lawsuit would not have arisen. Thus, Plaintiffs have failed to satisfy the second prong of the Ninth Circuit's test for establishing specific

jurisdiction, and the Court will grant PWC's motion to dismiss. *See Bancroft*, 223 F.3d at 1088; *Terracom*, 49 F.3d at 561.

**IT IS ORDERED:** Defendant PWC's motion to dismiss for lack of personal jurisdiction (Doc. 21) is **granted**.

Dated this 11th day of April, 2017.

_____
David G. Campbell
United States District Judge